IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **SEKOU CHERIF,**<br><br>      Plaintiff,<br><br>  v.<br><br>**DEPARTMENT OF VETERANS AFFAIRS,**<br><br>      Defendant. | Case No. 12 C 7576<br><br>Hon. Harry D. Leinenweber |

**MEMORANDUM OPINION AND ORDER**

**I.  BACKGROUND**

Sekou Cherif ("Cherif"), an African-American male Muslim began working for the Department of Veterans Affairs (the "VA") as a staff pharmacist in 1995.  In 2005, Cherif was transferred to the VA's Westside Hospital in Chicago, which is now known as the Jesse Brown VA Hospital.  As a staff pharmacist in the outpatient pharmacy, his primary function was to "assure the safe and appropriate use of drugs."  His duties included keeping "abreast of current medical and pharmaceutical literature, reviewing all physician medication orders for "appropriateness, choice of drug, route of administration and the amount," and filling all orders in a timely fashion. Glenn Ezaki ("Ezaki"), male, Japanese-American, Protestant, was Cherif's first-line supervisor; Isabel Savanson ("Savanson") was his second-line supervisor; and Dr. Richard Rooney ("Rooney"), male, Caucasian, Catholic, Chief of Pharmacy Services

was Cherif's third-line supervisor. Ezaki considered him an average employee at best and consistently ranked him in the middle performance category.

## II. DISCUSSION

### A. The Complaints Against Cherif

Starting in October 2009, Cherif was charged with "inappropriate and disrespectful conduct toward a patient and a co-worker." In July 2010 Cherif was reprimanded for causing an unnecessary delay in processing a patient's prescription. In August 2010, Cherif was suspended from work after a physician complained that he was "extremely confrontational" while questioning him about a medication dosage. In August 2011, Cherif was again suspended from work after management investigated a series of medication errors in made in March 2011. In October 2011 Cherif was issued a proposed removal after being charged with failing to cooperate with a team member, providing poor customer service to patients, and being disrespectful to his supervisor. This proposed removal was rescinded and reissued on February 22, 2011 to include a more recent medication error. Finally, on April 6, 2012, Cherif was removed from his position as a staff pharmacist by action of Director Michael Anaya ("Anaya"), male, Hispanic, Catholic, based on the recommendation of Rooney. The latter's recommendation was based upon his belief that Cherif made a series of errors involving high alert medications which would have

increased the harm to the veterans taking them and that Cherif showed no remorse for his mistakes and accepted no responsibility for his actions.

**B.  Cherif's Responses**

Cherif does not dispute the allegations about the incident with the patient and co-worker on October 2009.  For that incident he merely points out this was the first such complaint made against him.  He also does not dispute the allegations of poor customer service, a medication error and a delay in treatment for which he was counseled for in July 2010.  He does, however, dispute the propriety of the June 2010 reprimand for delay in processing a patient's prescription.  He contends that there are many reasons for such a delay.  He disputes the propriety of the suspension in August 2010, arising from a physician complaint about his behavior about a prescription dosage.  He filed a grievance and the seven-day suspension was reduced to three days.  He contends that the notice of proposed suspension he received in August 2011, concerning a series of medication errors he alleged made in March 2011 was not warranted.  He contends that the allegation lacked substance.  He disputes the accuracy of the facts justifying the proposed removal dated October 27, 2011, and he placed his refutation in writing.  Essentially he contends that he was blamed for actions of the team member who complained about him (Thelma Washington).  With regard to the disrespect shown to his

supervisor, Ezaki, he contends that when he was summoned to his office he was in the midst of completing a prescription order for a patient waiting in the emergency room. Finally, he contends that the charge of poor pharmaceutical judgment which led to the reissue of the removal on February 22, 2012 was not justified because the prescription in question had been written by an experienced attending physician.

### C. Cherif's Prior EEO Activity

Cherif first made contact with a counselor at the Equal Employment Opportunity Commission (the "EEOC") in June 2010 but made no formal complaint. He next made contact with the EEOC in June 2011, and cooperated with an investigation. The parties participated in mediation with no resolution. A formal Complaint of Discrimination was filed on September 5, 2011. The claims included whether Cherif was subjected to a hostile work environment based on religion, national origin, race and reprisal when he was accused of not calling a doctor for alternative medication, for being inflexible with his lunch breaks, leaving documentation of disciplinary action against him in a public area and the work suspension in August 2011. His complaint was subsequently amended to include both the October 2011 and the February 2012 proposed letters of removal. On August 22, 2012 the EEOC denied all of his claims.

The problem with attempting to tie his EEOC activity into his termination is that there was no evidence produced showing that either Anaya or Rooney was aware of his EEOC complaints. Furthermore, most of the alleged discriminatory actions occurred prior to Cherif filing his complaint with the EEOC.

### D. Alleged Direct Proof of Discrimination

Cherif alleges that he was subjected to harassment and discrimination because he was a Muslim of African descent. His first bit of evidence is that he was the only black male pharmacist during the time he was employed. However, as Rooney pointed out, he hired two black female pharmacists. Moreover, there was no evidence submitted that any black, male pharmacist was refused employment by the VA. The second bit of evidence is that he complained multiple times to Rooney about Ezaki's evaluation and that he was being micromanaged. He further complained about being suspended during a Muslim holiday. (The explanation was that if he was to serve a suspension it would be better for him financially to serve it while he was on holiday). Other allegations are that Rooney did not have personal knowledge of the alleged wrongdoings charged to Cherif. However, this is almost always the case with any decision maker: the decision is made on what the manager is told by others. Cherif contends that Rooney displayed animosity toward Muslims by virtue of two remarks: (1) comparing Cherif, a Muslim, with himself, a Catholic and (2) describing a female Muslim

technician as a woman with a "rag" or "scarf" on her head. The context of the first is unknown but was several years before Cherif was fired. The second was in an attempt to determine who had given a patient a specific medication. Was it the one with the scarf(rag) or the blond? It turned out that it was the blond. Cherif himself helped to defray any untoward inference of animosity, when he testified in an affidavit filed with EEOC that he never heard either Ezaki or Rooney make any derogatory comment against him based on his race, national origin, religion or prior EEOC activity. Stray remarks made around the time of the decision can sometimes raise an inference of discrimination by the decision maker, but "Isolated comments that are no more than 'stray' remarks' in the workplace are insufficient to establish that a particular decision was motivated by discriminatory animus." *Hemsworth v. Quotessmith.com, Inc.,* 476 F.3d 487, 491 (7th Cir. 2007). Consequently there is no direct proof of discrimination.

### E. Indirect Proof of Discrimination

Under the well-known indirect method of proof under *McDonnell Douglas Corp.,* 411 U.S. 792, 802 (1973), a claimant who lacks direct proof can proceed indirectly by establishing membership in a protected class (or protected activity), who is performing his job to legitimate expectations, who suffers an adverse employment action, and where similarly treated employees outside his protected class are treated more favorably. It is incumbent upon a claimant

to make this preliminary showing in order to shift the burden to the employer to articulate a non-discriminatory reason for the adverse action. *Id.* Here, Cherif has failed to establish two of the four elements. He, of course, has established that he is in a protected class (African-Muslim) and that he suffered an adverse employment action, his discharge. However, he has failed to establish that he was meeting the VA's legitimate expectations. The VA here has listed numerous shortcomings that Cherif was charged with during his tenure with the VA. He has admitted to some of them and contended that the rest were not valid. However, where Cherif fall short is to supply any proof that Rooney or Anaya had any reason to disbelieve the charges he contests. As has been said over and over federal courts do not sit as supra-personnel department to reexamine employment decisions. The question is not whether the decision was right or wrong but whether it was based on a discriminatory motive. *Balderston v. Faribanks Morse Engine Division of Coltec Industries,* 328 F.3d. 309, 324 (7th Cir. 2003).

In addition to the foregoing, Cherif has also failed to uncover any employee, who was not a member of his classification, was treated more favorably. He has admitted that he cannot name any such employee. His excuse is that on one occasion Rooney may have said (he denied it) to a co-employee, Raffatt Bano, that she was to report "medical" errors as "medical events." The problem with this is twofold: Bano did not know what the definition of

"medical error" was and Cherif failed to submit any evidence that any other pharmacist had committed medical events without punishment. In any event, to show "similar situated" a plaintiff must show common supervisor and disparate treatment of employees not in the same class. Here even if you grant that pharmacists were requested to under report medical errors, medical errors are only one of numerous complaints lodged against Cherif by the VA. He was charged with being rude to customers, doctors and his supervisor, in addition to poor customer service and unreasonable delay in processing prescriptions.

### III.  CONCLUSION

Cherif having failed to set forth a *prima facie* case of discrimination, including hostile work environment, or retaliation has not met his burden of production. Consequently, the VA's Motion for Summary Judgment is granted on those claims.

**IT IS SO ORDERED.**

                                    Harry D. Leinenweber, Judge
                                    United States District Court

Date:10/30/2014